FILED
2017 DEC 20 PM 3:20
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY: _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2017 Grand Jury

| UNITED STATES OF AMERICA, | ED CR No. 17-0278 MWF |
|---|---|
| Plaintiff, | **I N D I C T M E N T** |
| v. | [18 U.S.C. § 1343: Wire Fraud; 26 U.S.C. § 7206(1): Making and Subscribing to a False Income Tax Return] |
| CHRISTOPHER LLOYD BURNELL, | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH ELEVEN

[18 U.S.C. § 1343]

A. THE SCHEME TO DEFRAUD

1. Beginning on a date unknown, but no later than on or about November 30, 2010, and continuing to in or about September 2017, in San Bernardino and Riverside Counties, within the Central District of California, and elsewhere, defendant CHRISTOPHER LLOYD BURNELL ("BURNELL"), together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of materially

false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

2. The scheme to defraud operated, in substance, as follows:

   a. Defendant BURNELL would earn the trust of victims by holding himself out to be a former deputy sheriff of the San Bernardino County Sheriff's Department.

   b. Defendant BURNELL would earn the trust of victims by holding himself out to be a wealthy businessman.

   c. Defendant BURNELL would make false promises and statements, as well as material omissions, to induce victims to lend money to defendant BURNELL, for the supposed purpose of investing in high-return, low-risk or no-risk money-lending opportunities.

   d. In some instances, defendant BURNELL would represent that he made short-term, high-interest loans to small businesses that used them to finance projects.

   e. In some instances, defendant BURNELL would ask victims to loan him money for cancer treatment for defendant BURNELL's wife.

   f. In some instances, defendant BURNELL would ask victims to loan him money for costs associated with a child custody dispute with defendant BURNELL's father-in-law.

   g. In some instances, defendant BURNELL would use third parties to make false promises and statements, and material omissions, to victims.

   h. In reliance on defendant BURNELL's false promises and statements, and material omissions, victims would give money either directly to defendant BURNELL or indirectly to defendant BURNELL via third parties.

i. In some instances, defendant BURNELL would pay the victims back their initial investments with large amounts of supposed profits and, having earned the trust and confidence of the victims, would subsequently ask for larger investments.

j. Defendant BURNELL would not apply any of the victims' money toward the purported investments, nor toward any cancer treatment for defendant BURNELL's wife, nor for any child custody dispute with defendant BURNELL's father-in-law, as he had represented. Instead, after the victims had sent him the money, defendant BURNELL spent the money on his own personal expenses.

k. Defendant BURNELL would fail to repay the loans to the victims as he had promised.

l. Defendant BURNELL would lull some of the victims into believing that repayment would be forthcoming by causing them to be presented with an altered Wells Fargo Bank statement that falsely represented that defendant BURNELL and his wife had $150,220,310.19 in their bank accounts, when, in truth and in fact, the real balance in those Wells Fargo Bank accounts was $6,424.76.

m. In some instances, once victims invested and lent money to defendant BURNELL, defendant BURNELL would pressure them into giving and lending him more money, by telling them that his funds had been seized by federal law enforcement. In truth and in fact, federal law enforcement agencies had not seized defendant BURNELL's funds.

n. In some instances, once victims invested and lent money to defendant BURNELL, defendant BURNELL would pressure them into giving and lending him more money, by telling them that if he

did not receive more funds, he would not be able to pay back the original funds the victims had given and lent to defendant BURNELL.

3. By devising, executing, and participating in the above scheme, defendant BURNELL induced and attempted to induce victims S.B., D.S., G.T., M.E., G.M., B.P., J.T., Harbison Trust, and Belva Jean Shultz Trust, to distribute to him funds totaling approximately $5,672,380.90.

B. THE MISREPRESENTATIONS

4. In furtherance of the scheme to defraud, defendant BURNELL, and others known and unknown to the Grand Jury, knowingly made, caused to be made, and aided and abetted the making of, the following material false and fraudulent pretenses, representations, and promises, to, among others, victim investors:

    a. That defendant BURNELL had obtained part of his purported wealth by winning a multi-million dollar lawsuit against the County of San Bernardino for workplace-related injuries he suffered as a deputy sheriff for the San Bernardino County Sheriff's Department.

    b. That defendant BURNELL had obtained a part of his purported wealth by winning a multi-million dollar lawsuit against Kaiser Permanente for medical malpractice in connection with workplace-related injuries he suffered as a deputy sheriff for the San Bernardino County Sheriff's Department.

    c. That defendant BURNELL had obtained part of his wealth by obtaining and selling a patent for an air-cooled, bullet-resistant vest to Oakley, Inc. for a substantial amount of money.

    d. That defendant BURNELL owned a jet airplane and employed a crew to pilot the jet airplane.

5. In truth and in fact, as defendant BURNELL then well knew:

   a. Defendant BURNELL never prevailed in a lawsuit against the County of San Bernardino for workplace-related injuries he suffered as a deputy sheriff for the San Bernardino County Sheriff's Department.

   b. Defendant BURNELL never prevailed in a lawsuit against Kaiser Permanente for medical malpractice in connection with workplace-related injuries he suffered as a deputy sheriff for the San Bernardino County Sheriff's Department.

   c. Defendant BURNELL never sold a patent to Oakley, Inc.

   d. Defendant BURNELL did not own any jet airplane, but rather chartered a jet airplane and told the crew to pretend that defendant BURNELL owned the jet airplane.

C. CONCEALMENT OF MATERIAL FACTS

6. In furtherance of the fraudulent scheme, defendant BURNELL and his co-schemers knowingly concealed and caused others to conceal the following material facts from victims, among others:

   a. Defendant BURNELL had no legitimate revenue-producing money-lending operation.

   b. Defendant BURNELL had no legitimate revenue-producing business investment operation.

   c. Defendant BURNELL's wife, L.B., was not undergoing cancer treatments.

   d. Federal law enforcement authorities investigating defendant BURNELL had not seized funds in his bank accounts.

   e. Defendant BURNELL used the funds given to him by investors for personal expenditures, including gambling, for the

purchase of retail items and the chartering of jet airplanes, and to repay other investors.

D. USE OF INTERSTATE WIRE COMMUNICATIONS

7. On or about the following dates, within the Central District of California, and elsewhere, defendant BURNELL, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| ONE | December 26, 2012 | Cashier's check number 010570 in the amount of $70,000 from the account of J.T. made payable to San Manuel Casino deposited into Citizen's Business Bank in San Bernardino, California, and processed and cleared via wire to the Federal Reserve Bank in Dallas, Texas. |
| TWO | December 27, 2012 | Wire transfer of $40,000 from the account of Belva Jeanne Shultz Revocable Trust ending in 0704 at RBC Correspondent Bank in St. Paul, Minnesota, to the account of Belva Jeanne Shultz Revocable Trust ending in 0503 at Union Bank in Redlands, California. |
| THREE | January 2, 2013 | Cashier's check number 010578 in the amount of $60,000 from the account of J.T. made payable to San Manuel Casino deposited into Citizen's Business Bank in San Bernardino, California, and processed and cleared via wire to the Federal Reserve Bank in Dallas, Texas. |
| FOUR | January 3, 2013 | Wire transfer of $40,000 from the account of Belva Jeanne Shultz Revocable Trust ending in 0704 at RBC Correspondent Bank in St. Paul, Minnesota, to the account of Belva Jeanne Shultz Revocable Trust ending in 0503 at Union Bank in Redlands, California. |
| FIVE | January 8, 2013 | Cashier's check number 010589 in the amount of $35,000 from the account of J.T. made payable to San Manuel Casino deposited into Citizen's Business Bank in San Bernardino, California, and processed and cleared via wire to the Federal Reserve Bank in Dallas, Texas. |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| SIX | January 15, 2013 | Cashier's check number 010603 in the amount of $70,000 from the account of J.T. made payable to San Manuel Casino deposited into Citizen's Business Bank in San Bernardino, California, and processed and cleared via wire to the Federal Reserve Bank in Dallas, Texas. |
| SEVEN | January 15, 2013 | Cashier's check number 010604 in the amount of $25,000 from the account of J.T. made payable to San Manuel Casino deposited into Citizen's Business Bank in San Bernardino, California, and processed and cleared via wire to the Federal Reserve Bank in Dallas, Texas. |
| EIGHT | January 23, 2013 | Cashier's check number 010612 in the amount of $85,000 from the account of J.T. made payable to San Manuel Casino deposited into Citizen's Business Bank in San Bernardino, California, and processed and cleared via wire to the Federal Reserve Bank in Dallas, Texas. |
| NINE | January 29, 2013 | Cashier's check number 010616 in the amount of $45,000 from the account of J.T. made payable to San Manuel Casino deposited into Citizen's Business Bank in San Bernardino, California, and processed and cleared via wire to the Federal Reserve Bank in Dallas, Texas. |
| TEN | January 31, 2013 | Cashier's check number 010619 in the amount of $40,000 from the account of J.T. made payable to San Manuel Casino deposited into Citizen's Business Bank in San Bernardino, California, and processed and cleared via wire to the Federal Reserve Bank in Dallas, Texas. |
| ELEVEN | February 4, 2013 | Cashier's check number 010623 in the amount of $47,000 from the account of J.T. made payable to San Manuel Casino deposited into Citizen's Business Bank in San Bernardino, California, and processed and cleared via wire to the Federal Reserve Bank in Dallas, Texas. |

## COUNTS TWELVE AND THIRTEEN

[26 U.S.C. § 7206(1)]

On or about the following dates, in San Bernardino County, within the Central District of California, and elsewhere, defendant CHRISTOPHER LLOYD BURNELL ("BURNELL") willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for the following calendar years, which defendant BURNELL verified by a written declaration that it was made under penalty of perjury, and filed such tax return with the Internal Revenue Service, which defendant BURNELL did not believe to be true and correct as to every material matter contained therein, in that defendant BURNELL falsely claimed on line 22 of his Form 1040 that his total income in the indicated tax year was the amount indicated below, when, as defendant BURNELL then knew and believed, his total income for the

///
///

indicated calendar year was substantially more than the amount of total income he claimed:

| COUNT | DATE | CALENDAR YEAR | INCOME REPORTED ON LINE 22 |
|---|---|---|---|
| TWELVE | October 15, 2012 | 2011 | $6,763,865 |
| THIRTEEN | October 15, 2013 | 2012 | $2,750,000 |

A TRUE BILL

/S/
_____
Foreperson

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Office

JERRY C. YANG
Assistant United States Attorney
Deputy Chief, Riverside Office