TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG (Cal. Bar No. 241323)
Assistant United States Attorney
Chief, Riverside Branch Office
ROBERT S. TRISOTTO (Cal. Bar No. 314178)
Assistant United States Attorney
Riverside Branch Office
    3403 10th Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6221/6211
    Facsimile: (951) 276-6202
    E-mail:   Jerry.Yang@usdoj.gov
            Robert.Trisotto@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 17-00278-MWF |
|---|---|
|     Plaintiff, | PROSECUTION'S TRIAL MEMORANDUM |
|       v. | Trial Date:  May 10, 2022<br>Trial Time:  8:30 a.m. |
| CHRISTOPHER LLOYD BURNELL, | Location:    Courtroom of the Hon. |
|     Defendant. |            Michael W. Fitzgerald |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jerry C. Yang and Robert S. Trisotto, files its Trial Memorandum in accordance with Section E.1 of the Court's Criminal Motion and Trial Order.

    The prosecution has met and conferred with defense counsel about the factual summary, statement of the charges, time estimate for cross-examination of the prosecution's witnesses, and legal and evidentiary issues.  As more fully set forth in the accompanying

1  Memorandum of Points and Authorities, defense counsel contests the
2  allegations contained in the factual summary but agrees with the
3  statement of the charges and time estimate for cross-examination of
4  the prosecution's witnesses.  Defense counsel's positions concerning
5  each of the legal and evidentiary issues are set forth in the
6  accompanying Memorandum of Points and Authorities.

7       The prosecution respectfully requests leave to file additional
8  memoranda as may become appropriate before or during trial.

9  Dated: April 20, 2022          Respectfully submitted,

10                                 TRACY L. WILKISON
                                   United States Attorney
11
                                   SCOTT M. GARRINGER
12                                 Assistant United States Attorney
                                   Chief, Criminal Division
13
                                        /s/
14                                 _____
                                   JERRY C. YANG
15                                 ROBERT S. TRISOTTO
                                   Assistant United States Attorneys
16
                                   Attorneys for Plaintiff
17                                 UNITED STATES OF AMERICA

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES...............................................i

I.    INTRODUCTION.................................................1

II.   THE CHARGED OFFENSES........................................1

      A.    Wire Fraud............................................1

      B.    Filing a False Income Tax Return......................3

III.  TRIAL.......................................................3

      A.    Trial Date............................................3

      B.    Trial Length..........................................3

      C.    Stipulations..........................................3

      D.    Pretrial Motions......................................4

      E.    Jury Instructions and Verdict Form....................5

      F.    Witnesses.............................................5

IV.   FACTUAL SUMMARY.............................................6

      A.    Defendant Operated an Investment Fraud Scheme.........6

      B.    Defendant Spent Victims' Money on Luxury Items,
            Gambling and Private Planes...........................9

      C.    Defendant's Claimed Sources of His Wealth and
            Inability to Access His Wealth Were Misrepresentations....9

      D.    Defendant Failed To Report the Victim's Income On His
            2011 and 2012 Tax Returns............................11

V.    LEGAL AND EVIDENTIARY ISSUES...............................11

      A.    Party Opponent Admissions and the Rule of Completeness...11

      B.    Other Non-Hearsay Statements.........................13

            1.    Statements Not Offered for the Truth of the
                  Matter Asserted................................13

            2.    Contracts and Other Legally-Operative Verbal
                  Conduct........................................15

      C.    Physical Evidence and Chain of Custody...............15

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

     D.   Expert Witness Testimony...............................16

     E.   Summary Charts and Expert Summary Witness...............18

     F.   Business Records.......................................19

     G.   Evidence and Argument About the SEC and FINRA Actions
         Should be Excluded....................................19

     H.   Marital Privilege Not Applicable......................21

VI.  CONCLUSION.................................................22

ii

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>

3

*States v. Black,*

4

   767 F.2d 1334 (9th Cir. 1985) ................................. 16

5

*United States v. Banks,*

6

   556 F.3d 967 (9th Cir. 2009) ................................. 22

7

*United States v. Beverley,*

8

   775 F. App'x 468 (11th Cir. 2019) ............................ 17

9

*United States v. Brown,*

10

   562 F.2d 1144 (9th Cir. 1977) ................................. 14

11

*United States v. Chu Kong Yin,*

12

   935 F.2d 990 (9th Cir. 1991) ................................. 16

13

*United States v Connelly,*

14

   395 F. App'x 407 (9th Cir. 2010) ............................ 14

15

*United States v. Dominguez,*

16

   641 F. App'x 738 (9th Cir. 2016) ............................ 15

17

*United States v. Frantz,*

18

   2004 WL 5642909 (C.D. Cal. Apr. 23, 2004) .................. 18-19

19

*United States v. Garlick,*

20

   240 F.3d 789 (9th Cir. 2001) ................................. 2

21

*United States v. Harrington,*

22

   923 F.2d 1371 (9th Cir. 1991) ................................. 16

23

*United States v. Hunter,*

24

   266 F. App'x 619 (9th Cir. 2008) ............................ 12

25

*United States v. Jinian,*

26

   725 F.3d 954 (9th Cir. 2013) ................................. 2

27

*United States v. Lindsey,*

28

   850 F.3d 1009 (9th Cir. 2017) ................................. 2

i

**TABLE OF AUTHORITIES (CONTINUED)**

*United States v. Montgomery*,

  384 F.3d 1050 (9th Cir. 2004) ................................. 22

*United States v. Moran*,

  493 F.3d 1002 (9th Cir. 2007) ................................. 17

*United States v. Ortega*,

  203 F.3d 675 (9th Cir. 2000) ................................. 12

*United States v. Pang*,

  362 F.3d 1187 (9th Cir. 2004) ................................. 15

*United States v. Payne*,

  944 F.2d 1458 (9th Cir. 1991) ................................. 14

*United States v. Sherman*,

  281 F. App'x 720 (9th Cir. 2008) ............................. 17

*United States v. Shirley*,

  884 F.2d 1130 (9th Cir. 1989) ................................. 18

*United States v. Soulard*,

  730 F.2d 1292 (9th Cir. 1984) ................................. 18

*United States v. Strem,*

  959 F.2d 243 (9th Cir. 1992) ................................. 18

*United States v. Torres*,

  742 F. App'x 244 (9th Cir. 2018) ............................. 12

*United States v. Vallejos*,

  742 F.3d 902 (9th Cir. 2014) ................................. 13

STATUTES

Federal Rule of Evidence 106 ................................. 12, 13

Federal Rules of Evidence 401 ................................. 20

Federal Rule of Evidence 801 ................................. 12

Federal Rule of Evidence 901 ................................. 15, 16

## TABLE OF AUTHORITIES (CONTINUED)

Federal Rule of Evidence 902 ................................... 4, 19

Federal Rule of Evidence 1006 ................................... 4

Title 18, United States Code, Section 1343 .................... 1, 2

Title 26, United States Code, Section 7206 .................... 1, 3

SECONDARY SOURCES

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions

    § 47.15 (6th ed. 2009).

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.   INTRODUCTION**

3      Defendant Christopher Lloyd Burnell ("defendant"), a former

4  deputy sheriff of the San Bernardino County Sheriff's Department,

5  committed wire fraud and filed false income tax returns.  Between

6  about 2011 and continuing to at least 2013, defendant operated an

7  investment fraud scheme in which he falsely portrayed himself as a

8  businessman worth more than $150 million who controlled numerous

9  investment opportunities when, in fact, he was unemployed with little

10  to no net worth.  After deceiving numerous victims into "investing"

11  millions of dollars with him, defendant used the money to maintain a

12  lifestyle filled with luxury goods for himself and his various

13  girlfriends, private jet airplane rides, and gambling.  Defendant

14  also failed to report the millions of dollars he received from

15  victims on his 2011 and 2012 tax returns, resulting in a tax

16  liability of $0 rather than more than $1 million.

17      For his actions, defendant has been indicted for 11 counts of

18  wire fraud, in violation of 18 U.S.C. § 1343, and two counts of

19  filing a false tax return, in violation of 26 U.S.C. § 7206(1).

20  Trial starts May 10, 2022.

21  **II.   THE CHARGED OFFENSES**

22      **A.   Wire Fraud**

23      Counts 1 to 11 of the Indictment charge defendant with violating

24  18 U.S.C. § 1343: Wire Fraud.  This crime has four elements:

25      First, the defendant knowingly participated in, devised, or

26  intended to devise a scheme or plan to defraud, or a scheme or plan

27  for obtaining money or property by means of false or fraudulent

28  pretenses, representations, or promises, or omitted facts.  Deceitful

statements of half-truths may constitute false or fraudulent representations;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme. *See* Ninth Circuit Model Criminal Jury Instructions, No. 15.35 (2022 ed.).

Additionally, "a fraud victim's negligence is not a defense to criminal charges under the federal fraud statutes." *United States v. Lindsey*, 850 F.3d 1009, 1014-15 (9th Cir. 2017).

Moreover, the "interstate" requirement in 18 U.S.C. § 1343 is jurisdictional and not a substantive element of wire fraud. *United States v. Jinian*, 725 F.3d 954, 965 (9th Cir. 2013). Thus, the prosecution is not required to prove that it was reasonably foreseeable to defendant that the wire communication would be interstate in nature. *Id.*

Finally, each transmission by wire in interstate commerce to advance, further, or carry out the scheme may be a separate wire fraud count. *See United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001); *see also* O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 47.15 (6th ed. 2009).

**B.   Filing a False Income Tax Return**

Counts 12 and 13 charge defendant with filing a false tax return, in violation of 26 U.S.C. § 7206(1).  This crime has three elements.

First, the defendant signed and filed a tax return that he knew contained false or incorrect information as to a material matter;

Second, the return contained a written declaration that it was being signed subject to the penalties of perjury; and

Third, in filing the false tax return, the defendant acted willfully.  *See* Ninth Circuit Model Criminal Jury Instructions, No. 22.3 (2022 ed.)

A matter is material if it had a natural tendency to influence or was capable of influencing, the decisions or activities of the Internal Revenue Service.  (*Id.*)

Furthermore, to prove the defendant acted "willfully," the prosecution must prove that the defendant knew federal tax law imposed a duty on him, and the defendant intentionally and voluntarily violated that duty.  (*Id.*, No. 22.6.)

**III. TRIAL**

**A.   Trial Date**

A jury trial is set to begin on May 10, 2022, at 8:30 a.m.

**B.   Trial Length**

The prosecution expects that its case-in-chief, including anticipated cross examination, will take about 7 to 8 trial days. Defense counsel agrees with this estimate.

**C.   Stipulations**

To date, the parties have stipulated to: (1) the use of interstate wire communications for the cashier's checks and wire

transfers charged in Counts 1 to 11 of the Indictment; (2) to testimony concerning a payment under an arbitration award from Kaiser Permanente to defendant; and (3) the admissibility of certain of the government's exhibits.

On April 19, 2022, defense counsel authorized the prosecution to sign the three stipulations on behalf of counsel and defendant and file them with the Court.  (*See* ECF Nos. 99-101.)  Defense counsel intends to obtain defendant's handwritten signature on the stipulations at the next available opportunity.

In light of these stipulations, the prosecution does not anticipate calling representatives from the Federal Reserve Bank, Citizens Business Bank, Pacific Premier Bank, RBC Correspondent Bank, Union Bank, and Kaiser Permanente to testify at trial.

### D.   Pretrial Motions

There are two pretrial motions pending with the Court:  (1) a motion *in limine* to exclude defendant from presenting evidence or argument on victims' negligence and defendant's intent to repay (ECF No. 90), and (2) a motion *in limine* to admit business records under Federal Rule of Evidence 902(11) (ECF No. 96).

The Court previously granted three other pretrial motions filed by the prosecution, namely, (1) a motion *in limine* to admit business records under Federal Rule of Evidence 902(11) (ECF No. 76), (2) a motion *in limine* to admit public records under Federal Rules of Evidence 902(1) and 902(4) (ECF No. 72), and (3) a motion *in limine* to admi summary charts under Federal Rule of Evidence 1006 (ECF No. 87.)

Defendant has not filed any pretrial motions to date.

1
**E.   Jury Instructions and Verdict Form**

2
On March 28, 2022, the parties filed their Proposed Joint Jury

3
Instructions and Proposed Joint Verdict Form.  No disputed jury

4
instructions were filed.

5
**F.   Witnesses**

6
The government presently intends to call the following witnesses

7
in its case-in-chief:

8
<u>Victims</u>

9
1.   S.B.

10
2.   E.B.

11
3.   C.C.

12
4.   M.E.

13
5.   M.F.

14
6.   K.L.

15
7.   S.M.

16
8.   G.M.

17
9.   B.P.

18
10.  D.S.

19
11.  K.S.

20
12.  G.T.

21
13.  J.T.

22
<u>Agents</u>

23
14.  IRS-Criminal Investigations Special Agent Chris Seymour

24
<u>Experts</u>

25
15.  James K. Ellis

26
16.  IRS Revenue Agent Lisa Vaughan

27
<u>Third-Party Entities</u>

28
17.  Oakley Representative (Erik Poston)

18.  San Bernardino County Representative (Colin Bishop)

19.  San Manuel Casino Representative (Tom Paramo)

20.  SEC Representative (Magnolia Irwin)

21.  Wells Fargo Bank Representative (To be determined)

Third-Party Persons

22.  Brooke Borso

23.  Carlie Burnell

24.  Lisa Burnell

25.  Mike Jackman

26.  Louise Martin

27.  Leslie Newport

28.  David Nicothodes

29.  Eric Niederman

30.  Theresa Trujillo

31.  Mary Wright

**IV.   FACTUAL SUMMARY**

The prosecution expects to prove the following at trial:[1]

**A.   Defendant Operated an Investment Fraud Scheme**

Defendant was a former deputy sheriff of the San Bernardino County Sheriff's Department who falsely claimed to have accumulated a fortune.  According to defendant, he obtained his wealth from:  (1) winning a multi-million dollar lawsuit against the County of San Bernardino for workplace-related injuries he suffered as a deputy sheriff, (2) winning a multi-million dollar arbitration against Kaiser Permanente for medical malpractice, (3) selling a multi-million dollar patent for air-cooled, bullet-resistant vest to

---

[1] Defendant contests these allegations.

6

Oakley, Inc., and (4) through investments in small business and money-lending opportunities.

For example:

- **Victim G.T.** is expected to testify he believed defendant had received more than $100 million from lawsuits against the San Bernardino County's Sheriff Department and Kaiser Permanente, received a yearly fee for a design he sold to Oakley, and made additional money through small business investments.

- **Victim D.S.** is expected to testify that he believed defendant was worth tens of millions of dollars from lawsuits he won against the San Bernardino County's Sheriff Department and Kaiser Permanente.

After deceiving victims into believing he was a wealthy businessman, defendant would then induce victims to invest tens of thousands to hundreds of thousands of dollars at a time with him by offering exclusive investment opportunities that promised rates of returns as high as 100 percent.  In some instances, defendant asked the victim for an initial trial investment with him, during which he would fulfill his promised returns (and gain the victim's trust), only to ask for a larger amount from the victim.

But these investment opportunities did not actually exist. Rather, defendant would spend the money on maintaining a life of luxury for himself and his girlfriends, gambling, and private jets. Defendant continued this investment fraud scheme for years until he could not identify new victims to defraud and the money from his victims ran out.

As victims began to raise concerns to defendant about a lack of repayment and defaults, defendant resorted to more lies and deceit.

Defendant claimed that his money had been tied up in a trust fund and his remaining assets had been seized by federal authorities.  He then cheated some of the victims out of more money by claiming he needed loans to pay for his wife's cancer treatment, a child custody dispute with his father-in-law, and other personal expenses.  To alleviate victims' concerns, defendant showed many victims a fabricated Wells Fargo bank statement that said he had $150,220,310.19 in his account that he would use to pay back victims once his funds were no longer tied up (in truth, defendant had only $6,424.76 in that account).

For instance:

- **Victim J.T.** is expected to testify that he lost more than $4 million through defendant's investment fraud scheme.  After defendant defaulted on J.T.'s initial investments, defendant deceived J.T. into loaning him hundreds of thousands of dollars more to pay off fines associated with a levy the Internal Revenue Service placed on his bank account, to pay for his wife's cancer treatment and other personal expenses, and to assist defendant in getting access to money he claimed to have in a trust.

- **Victim S.B.** is expected to testify that he lost more than $600,000 through defendant's investment fraud scheme.  After defendant defaulted on S.B.'s initial investments, defendant claimed he would repay S.B. as soon as he could access his trust fund and resolve Internal Revenue Service levies.  In the interim, defendant cheated S.B. out of $300,000 more by claiming that he needed money for his wife's cancer treatment.

- **Victim B.P.** is expected to testify that she lost $15,000 from defendant's investment fraud scheme. Although B.P. received a return on her initial investment, she rolled it into a second investment with defendant that he never repaid, repeatedly creating excuses such as his money was tied up in federal investigations and ongoing litigations.

## B. Defendant Spent Victims' Money on Luxury Items, Gambling and Private Planes

Defendant spent victims' money on, among other things, gambling and luxury items, including more than $1 million in gambling at the San Manuel Casino, $500,000 in private jet trips, $70,000 on Louis Vuitton merchandise, and $138,000 on luxury cars and an apartment lease for his girlfriends. In addition to the documentary evidence, this will be supported by testimony from (1) Tom Paramo, a representative from San Manuel Casino, who is expected to testify that defendant gambled at his casino a total of $21 million and $13 million in 2011 and 2012, respectively, and lost a total of $1.3 million and about $626,000 in 2011 and 2012, respectively; (2) former Desert Jet pilots Mike Jackman and Eric Niederman, who flew private jets chartered by defendant on which he claimed to own the planes; and (3) defendant's former girlfriends, including Brooke Borso, Leslie Newport, and Theresa Trujillo, for whom defendant purchased luxury items, including two cars, and paid for an apartment lease.

## C. Defendant's Claimed Sources of His Wealth and Inability to Access His Wealth Were Misrepresentations

There are also no records from San Bernardino County, Kaiser Permanente, or Oakley supporting defendant's story to his victims about the sources of his wealth.

Colin Bishop, a representative from the County of San Bernardino, is expected to testify that defendant has not prevailed in any lawsuits against the county.  Although defendant filed a case against the County in 2002 related to his time working at a jail facility operated by the County, the case was ultimately dismissed after the court found defendant did not carry his burden to show his disability was caused during the course of his employment.

The parties will be stipulating that the only payment defendant received from Kaiser Permanente was a one-time payment in 2003 of about $1 million under an arbitration award.

And Erik Poston, a representative with Oakley, is expected to testify that, based upon a search of Oakley's records, Oakley does not have any record of defendant selling a patent Oakley.

Additionally, the evidence will prove that defendant's statements concerning his inability to access his wealth were misrepresentations.  The prosecution anticipates that Magnolia Irwin with the Securities Exchange Commission ("SEC") will testify that the SEC has never frozen or seized defendant's assets and that Revenue Agent Seymore will testify that in 2012, the IRS levied two of defendant's bank accounts, which had an aggregate balance of just $98.25.  Furthermore, a representative of Wells Fargo is expected to testify that Wells Fargo did not act as a trustee on any trust funds for defendant.

Furthermore, defendant's remaining misrepresentations to the victims will be shown to be false through other witnesses, such as defendant's ex-wife Lisa Burnell, who will testify she never had cancer and that there was no child-custody dispute between defendant and his in-laws.

### D.   Defendant Failed To Report the Victim's Income On His 2011 and 2012 Tax Returns

Defendant did not report any of the money he received from victims in 2011 or 2012 on his personal income tax returns that he filed jointly with his wife.  Defendant's failure to do so was willful.  Each year defendant would provide his tax preparer David Nicothodes with documentation and information to prepare his taxes but each year defendant failed to disclose to Mr. Nicothodes the millions of dollars he received from victims.  Instead, as Mr. Nicothodes is expected to testify, defendant only reported income from gambling winnings in 2011 and 2012, all of which was offset by gambling losses.  Consequently, defendant had a tax liability of $0 rather than more than $1 million over the two years.

## V.   LEGAL AND EVIDENTIARY ISSUES

### A.   Party Opponent Admissions and the Rule of Completeness

The prosecution intends to introduce some of defendant's prior statements to victims at trial.  For example, as part of defendant's scheme, he would tell victims that he was a former sheriff who amassed a fortune from winning multi-million dollar lawsuits against San Bernardino County and Kaiser Permanente, selling a patent to Oakley, and loaning money to small businesses.  These statements are not hearsay because the statements are not solicited to prove the truth of the matter asserted, i.e., not being used to prove that defendant did, in fact, win multimillion dollar lawsuits, or sold a patent to Oakley, or lent money to small businesses.  Moreover, even if the statements were somehow used to prove the truth of the matter asserted, they were made by defendant and are being offered against

11

him as a party admission.  *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000).

Courts routinely admit defendant's prior statements as party opponent admissions in criminal cases.  This includes electronic communications, such as text messages.  For example, in *United States v. Torres*, the Ninth Circuit found that a district court erred by excluding text messages between a defendant and an alleged co-conspirator because, among other things, the text messages "qualify as statements of a party opponent."  742 F. App'x 244, 245 (9th Cir. 2018).  *See also United States v. Hunter*, 266 F. App'x 619, 622 (9th Cir. 2008) (excerpts of text messages qualified as party-opponent admissions and were, therefore, not hearsay).

Although the prosecution may introduce defendant's prior statements under Fed. R. Evid. 801(d)(2)(A), defendant is generally barred from presenting or eliciting his own prior statements. Defendant's "self-inculpatory statements, when offered by the government are admissions of a party-opponent and are therefore not hearsay, but the non-self-inculpatory statements are inadmissible hearsay."  *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000).  So a defendant's placement of his exculpatory statements "before the jury without subjecting himself to cross-examination" is "precisely what the hearsay rule forbids."  *Id.* (quotation marks omitted).

Furthermore, the mere fact that the government may introduce excerpts of defendant's electronic communications with victims does not mean all of his communications must be admitted.  Under Federal Rule of Evidence 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the

introduction, at that time, of any other part -- or any other writing or recorded statement -- *that in fairness ought to be considered at the time*." Fed. R. Evid. 106 (emphasis added).  Thus, Rule 106 "does not . . . require the introduction of any unedited writing or statement merely because an adverse party has introduced an edited version." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (emphasis in original).  A "complete statement" is only required if it "serve[s] to correct a misleading impression in the edited statement that is created by taking something out of context." *Id.*  The prosecution does not intend to introduce statements that are misleading or taken out of context, and thus the defendant should be barred from introducing his own statements.

Defense counsel disagrees with the prosecution's position and believes these statements are inadmissible hearsay.

**B.   Other Non-Hearsay Statements**

The prosecution also anticipates offering into evidence out-of-court statements that are not opposing-party admissions but are still non-hearsay because either (1) they will not be offered to prove the truth of the matter asserted or (2) they are evidence of legally-operative verbal conduct.  Defense counsel disagrees with the prosecution's position set forth below and believes these statements are inadmissible hearsay.

1.   Statements Not Offered for the Truth of the Matter Asserted.

The prosecution anticipates introducing out-of-court statements made between victims that are non-hearsay statements because they will not be offered for the truth of the matter asserted. Specifically, defendant would often use third parties to find new

13

victims for him.  The third parties would make representations about defendant's wealth and investment opportunities.  For instance, defendant used victim K.L. to find new investors for him, which ultimately led to, victim K.L. introducing victims J.T., D.S., S.B. to defendant.  Victim K.L. told victims J.T., D.S., and S.B. about his personal investments with defendant, his relationship with defendant, defendant's background and wealth, and/or investment opportunities being offered by defendant.  These type of statements will be offered to show the effect on the listener (i.e., the victims), give context to the victims' decision to meet/invest with defendant, and to show the victims' state of mind.

Out-of-court statements introduced to show the effect on the listener are not hearsay.  *See United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991).  For example, in *United States v Connelly*, the defendant challenged a fraud victim's testimony that she received a warning from a local banker that a large check had been drawn in her name.  395 F. App'x 407, 408 (9th Cir. 2010).  The Ninth Circuit concluded that the victim's statement was not hearsay because "it was offered to show the effect on the listener" but rather to "explain why she went to the bank to investigate."  (*Id.*)  By way of additional example, in *United States v. Brown*, the Ninth Circuit held that statements used to show the defendant's state of mind were properly admitted for a non-hearsay purpose because "[t]he contents of these statements were not important; what the content shows was." 562 F.2d 1144, 1148 (9th Cir. 1977).  And similarly, in *United States v. Dominguez*, the Ninth Circuit ruled that the district court did not abuse its discretion by admitting video and audio recording of the defendant's meeting with a cooperating witness because "the witness's

1  statements were admissible to provide context for [the defendant]'s

2  statements."   641 F. App'x 738, 741 (9th Cir. 2016).

3          2.   Contracts and Other Legally-Operative Verbal Conduct.

4          The prosecution also expects that its evidence will include

5  checks, cashier's checks, promissory notes, and other commercial

6  documents.   These out-of-court statements that are offered as

7  evidence of legally-operative verbal conduct are not hearsay and,

8  therefore, admissible.  *See United States v. Pang*, 362 F.3d 1187,

9  1192 (9th Cir. 2004).

10     **C.   Physical Evidence and Chain of Custody**

11         The prosecution intends to introduce physical evidence at trial

12 that were found by IRS-Criminal Investigations Special Agent Seymour

13 during a search warrant execution at defendant's home on July 18,

14 2013.   For example, SA Seymour will testify that he found, among

15 other things, an original Wells Fargo bank statement for defendant's

16 account ending 2615 for the time period May 1, 2011 to May 31, 2011.

17 The second page of the bank statement had blacked out account numbers

18 and ending balances.   It also had white correction tape with the

19 typewritten number "$150,220,310.19" covering the true balance of

20 $6,424.76.   SA Seymour further found a wide chisel tip Sharpie

21 permanent marker, a Scotch precision cutter, two Bic White-Out exact

22 liners, and glue sticks in one bag in close proximity to the altered

23 bank statement.

24         Federal Rule of Evidence 901(a) provides that "the requirement

25 of authentication or identification as a condition precedent to

26 admissibility is satisfied by evidence sufficient to support a

27 finding that the matter in question is what its proponent claims."

28 Rule 901(a) only requires the government to make a prima facie

showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." *United States v. Chu Kong Yin*, 935 F.2d 990, 996 (9th Cir. 1991). Once the government meets this burden, "the credibility or probative force of the evidence offered is, ultimately, an issue for the jury." *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985).

To be admitted into evidence, a physical exhibit must be in substantially the same condition as when the crime was committed. Fed. R. Evid. 901. The Court may admit the evidence if there is a "reasonable probability the article has not been changed in important respects." *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). In establishing chain of custody as to an item of physical evidence, the government is not required to call all persons who may have come into contact with the piece of evidence. *Id.* Moreover, a presumption of regularity exists in the handling of exhibits by public officials. *Id.* Thus, to the extent that alleged or actual gaps in the chain of custody exist, such gaps go to the weight of the evidence rather than to its admissibility. *Id.*

Defense counsel does not object to the prosecution admitting physical exhibits and has stipulated to their admissibility.

### D. **Expert Witness Testimony**

The prosecution anticipates two experts testifying at trial.

First, James Ellis, a private investigator and former Special Agent with the Federal Bureau of Investigation, is expected to provide expert testimony about how investment fraud schemes operate, including, for example, how fraudsters claim to have great wealth, viable business investments, use third-parties to solicit more victims, repay initial investments so that they can ask for much

larger investments that are never returned, and come up with excuses for lack of payment.

Second, Revenue Agent Lisa Vaughan with the Internal Revenue Services is expected to provide her expert opinion that defendant underreported his gross income by $2,480,000 and $1,413,437 on his 2011 and 2012 federal income tax returns, respectively, and had defendant correctly reported his gross income, defendant's tax liability would have been $829,657 and $455,633 in 2011 and 2012, respectively.

Both experts are permissible in a case charging wire fraud and filing a false tax return. *See, e.g.*, *United States v. Sherman*, 281 F. App'x 720, 721 (9th Cir. 2008) (holding that the district court did not abuse its discretion in admitting expert testimony concerning the characteristics of investment fraud schemes in a wire, mail, and securities fraud case); *United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007) (an expert witness in a tax case can testify to the tax implications of a financial transaction when the testimony is necessary to determine the amount of tax owed); *United States v. Beverley*, 775 F. App'x 468, 474 (11th Cir. 2019) (holding that the district court did not abuse its discretion when it allowed an Internal Revenue agent to give an expert opinion about whether financial transactions constituted income to defendant).

The prosecution provided defense counsel notice of Mr. Ellis's and Revenue Agent Vaughan's expected testimonies on March 11, 2020 and March 23, 2022, respectively. Defense counsel has informed the prosecution that defendant does not object to the expert testimony expected to be elicited from Mr. Ellis and Revenue Agent Vaughan to the extent it falls within the scope of the prosecution's notices.

### E.    Summary Charts and Expert Summary Witness

Because this case involves a large number of financial records, the prosecution has prepared summary charts of those financial records to assist in the jury's understanding of the case.  Those summary charts are marked as Exhibits 375 to 381 and were previously admitted into evidence by the Court on March 31, 2022.  (ECF Nos. 87, 95.)

The prosecution intends to have Revenue Agent Vaughan testify as a summary witness about Exhibits 375 to 381, which she has fully reviewed.  A summary witness may properly testify about, and use a chart to summarize, admissible evidence because the Court and jury are entitled to have a witness "organize and evaluate evidence [that] is factually complex and fragmentally revealed[.]"  *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989).  Moreover, a summary witness may be assisted by others in the preparation of summary evidence, as any assistance goes to weight, not admissibility.  *United States v. Soulard*, 730 F.2d 1292, 1299 (9th Cir. 1984).

Furthermore, an expert may serve as a summary witness.  As the Ninth Circuit recognized in *United States v. Strem,* a "district court has discretion to allow an agent of the Internal Revenue Service to testify as an 'expert summary witness' based upon the agent having heard the testimony of the other witnesses and having reviewed the government's exhibits."  959 F.2d 243, 243 (9th Cir. 1992).  Thus, "[t]he use of summary expert witnesses is not uncommon, particularly in tax cases," which such witnesses playing a "hybrid" role.  *United States v. Frantz*, CR No. 02-01267(A)-MMM, 2004 WL 5642909, at *15 (C.D. Cal. Apr. 23, 2004) (discussing how an IRS agent can testify in several capacities, from an expert witness proffering knowledge of

tax law and preparing tax returns, to summarizing the government's own evidence).

The prosecution disclosed that it would be calling Revenue Agent Vaughan as a summary witness in letters March 11, 2020, September 10, 2021, and March 23, 2022.  Defense counsel stated that defendant does not object to the prosecution's use of Revenue Agent Vaughan as an expert summary witness.

**F.   Business Records**

The Court previously granted the prosecution's motion *in limine* to admit hundreds of business records under Federal Rule of Evidence 902(11) for 75 business entities.  (ECF Nos. 76, 77.)  During trial preparation, the prosecution discovered that its motion inadvertently cited the incorrect Bates numbers of some of the custodians' certifications accompanying the business records.  (ECF No. 76 at 3-10.)  Because the prosecution intends to admit some of those records into evidence under the Court's ruling, the prosecution informed defense counsel of this error and wanted to apprise the Court of this error and provide the correct Bates numbers for the custodians' certifications supporting those records, which include certifications for BMW (GOVT_210007-08), Citizens Business Bank (GOVT_210009-10), Equinox Securities, Inc. (GOVT_210011-12), and RBC Capital Markets (GOVT_210026-27).

**G.   Evidence and Argument About the SEC and FINRA Actions
      Should be Excluded**

The prosecution previously moved the Court to exclude evidence defendant may present and argument that defendant may make concerning either (1) victims' negligence or (2) defendant's intent to repay victims.  (ECF No. 90.)  That motion remains pending with the Court.

In addition to those topics, the Court should also exclude any evidence or argument concerning *Securities and Exchange Commission v. John Thornes, Christopher Burnell, et al.*, ED CR No. 14-01598-RGK (C.D. Cal.) (the "SEC Action") and *Department of Enforcement v. Thornes & Associates, Inc., Investment Securities, et al.*, Matter No. 20120305674 (FINRA) (the "FINRA Action"). The SEC and FINRA Actions centered on whether or not victim J.T. misappropriated funds from two trusts (the Belva Jean Shultz Trust and Harbison Trust) by transferring the funds to defendant and victim K.L. The SEC Action resulted in consent judgments against both victim J.T. and defendant -- who was a relief defendant in the case -- in which neither admitted nor denied any allegations of the complaint. The FINRA Action resulted in victim J.T. being barred from any association with any FINRA member.

The Court should exclude any evidence or argument concerning either the SEC Action or FINRA Action under Federal Rules of Evidence 401 and 403 because they are irrelevant and risk confusing the issues and misleading the jury. Specifically, whether victim J.T. believed defendant's claimed "investments" were within the parameters of what he could invest the trusts' funds is not relevant to any element of the wire fraud or filing false tax return charges. Rather, it would merely confuse the issues and mislead the jury into believing defendant is somehow not guilty because victim J.T. was charged with misappropriating trust funds. This would be misleading because the SEC Action resulted in a consent judgment (in which defendant was a relief defendant) where there was no finding that victim J.T. committed any wrongdoing. Moreover, if defendant were permitted to solicit evidence of either the SEC Action or FINRA Action, there

would be an increased risk of an unnecessary and confusing mini-side trial regarding those two actions.

A related, but also improper, purpose of presenting testimony or making arguments concerning the SEC Action or FINRA Action would be to put on a defense that victim J.T. was negligent in deciding to invest with defendant.  For the reasons discussed in the prosecution's pending motion *in limine* (ECF No. 90), such an argument is also impermissible.

Accordingly, the prosecution and defense have met and conferred about the SEC and FINRA Actions and have reached a partial agreement. Specifically, both sides have agreed to not present evidence or make arguments related to the SEC and FINRA Actions, with two exceptions. First, as part of its case-in-chief, the prosecution intends to elicit testimony from Magnolia Irwin, a representative of the SEC, to show the falsity of defendant's misrepresentations, that is, that the SEC did not seek to freeze or seize defendant's property or money during the relevant time period.  Second, defense counsel intends to elicit testimony from victim J.T. on cross-examination about why he was barred from any association with any FINRA member.  The parties continue to meet and confer about these two items and will seek a ruling from the Court on them if the parties are not able to reach an agreement.

### H.  Marital Privilege Not Applicable

The prosecution intends to call Lisa Burnell, who is defendant's ex-wife, to testify at trial that she did not hundreds of thousands of dollars of cancer-related medical treatment and defendant was not in a child-custody dispute with her parents.  This testimony falls outside of any martial privilege that may be asserted by defendant.

1    "The marital communications privilege protects from disclosure
2    private communications between spouses, and may be invoked by the
3    non-testifying spouse."  *United States v. Banks*, 556 F.3d 967, 974
4    (9th Cir. 2009) (internal citations omitted).  It protects
5    communications made during the pendency of a marriage.  *See United*
6    *States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004).  The
7    purpose of the privilege is "to protect the integrity of marriages
8    and ensure that spouses freely communicate with one another."  *Banks*,
9    556 F.3d at 974.  "[B]ecause the marital communications privilege
10   obstructs the truth seeking process," however, the Ninth Circuit has
11   recognized that "its use 'in criminal proceedings requires a
12   particularly narrow construction because of society's strong interest
13   in the administration of justice.'"  *Id.* (quoting *United States v.*
14   *White*, 974 F.2d 1135, 1138 (9th Cir. 1992)).

15   Here, the prosecution does not intend to elicit testimony from
16   Ms. Burnell about any private communications with defendant during
17   the pendency of their marriage and, thus, defendant will not be able
18   to assert any marital privilege as to her testimony about cancer
19   treatment and child-custody disputes.  Defense counsel agrees to not
20   object to the prosecution's line of questioning to the extent it
21   falls outside the marital privilege.

22   **VI.   CONCLUSION**

23   The government respectfully requests leave to file supplemental
24   trial memoranda before or during trial, as may become appropriate.

25
26
27
28

22